## MULLALY v. MAYOR OF NEW YORK.

*New York city — contracts with city — city official interested in contracts. Statutory construction — Laws 170, chap. 137, § 115, to be liberally construed.*

The provisions of Laws 1870, chap. 137, § 115, in respect to contracts with the city of New York, that " no member of the common council * * * or other officer of the corporation shall be directly or indirectly interested in any contract, work or business, the price or consideration of which is paid from the city treasury," etc., *held* to apply to the owner of a newspaper designated under Laws 1871, chap. 574, to publish the proceedings of the common council. *Held,* also, that a part payment of the contract price of publication did not render the contract therefor valid against the city.

*Held,* further, that the provision in question should be liberally construed to promote the end designed to be accomplished thereby.

MOTION for judgment by plaintiff on a verdict taken in his favor subject to the opinion of the general term.

The action was brought by John Mullaly against The Mayor, etc., of New York city, to recover for advertising for defendants in the Metropolitan Record. The facts fully appear in the opinion.

*John H. Strahan,* for plaintiff, cited *People* v. *Flagg,* 17 N. Y. 584; *Farmers' L. & T. Co.* v. *Mayor of New York,* 4 Bosw. 80;

*Smith* v. *Mayor of New York,* 21 How. 1; *Harlem Gas Light Co.* v. *Mayor of New York,* 33 N. Y. 309; *McLaren* v. *Mayor of New York,* 1 Daly, 243.

*E. Delafield Smith* and *James M. Smith,* for defendants.

Present — DAVIS, P. J., DANIELS and JAMES, JJ.

DANIELS, J.   It appears from the proof given upon the trial and the admissions contained in the pleadings in this cause that the plaintiff was the owner of a newspaper published in the city of New York called the *Metropolitan Record;* that on the 10th day of May, 1871, the mayor and comptroller of the city of New York, under the authority conferred upon them by virtue of section 1, chapter 574 of the Laws of 1871, designated that as one of the weekly newspapers to publish a digest of the proceedings of the common council as prepared and authorized under the direction of the mayor and comptroller.   Under and pursuant to such designation the publication was made in that newspaper from the 9th of January, 1872, until the 9th of January, 1873.   Payments were made for the publication up to the 1st of January, 1873.   When it was discontinued a balance remained due to the plaintiff amounting to eight thousand six hundred and forty-four dollars and forty-one cents, for which, with interest, the verdict was directed.

When the designation of the plaintiff's paper was made, and during the time the digest of the proceedings of the common council was published in it, he was one of the health commissioners of the city of New York.   The act of 1871 simply conferred upon the mayor and comptroller the power and rendered it their duty to designate the papers in which the digest of the proceedings of the common council should be published, and provided for publication in such journals. It contained nothing which removed or was inconsistent with the restraints imposed by preceding legislation, declaring the class of persons who should not be employed or interested in the contracts or work of the corporation.   It did not either expressly or by implication provide that contracts or employment, prohibited as unlawful by other statutes, should be made, maintained or enforced under any of its provisions.   But it simply created the authority to designate and employ public journals, defined the manner in which that should be done, the duties to be performed, and the

mode through which payments might be secured, and this was in no respect, whatever, inconsistent with the continuance of preceding laws, providing that officers and persons in the employment of the corporation should not be directly or indirectly interested in the contract made by it or its officers, and where that may be the nature of a succeeding law, it does not have the effect of repealing or modifying that which has preceded it.   This is a well-settled rule applied to the construction of statutes.   And it renders it the duty of the courts to maintain and enforce both, where the latter is not found to be plainly inconsistent with the former.   *Spratt* v. *Huntington*, 4 N. Y. Sup. 551, 554.

Under this rule, the provision authorizing the designation by the mayor and comptroller, made by the act of 1871, must be considered and enforced, subject to the restraint created by section 115 of chapter 137, of the Laws of 1870, which provided that no member of the common council, head of department, chief of bureau, deputy thereof, or clerk therein, or other officer of the corporation shall be directly or indirectly interested in any contract, work or business, the price or consideration of which is paid from the city treasury, or any assessment levied by any act or ordinance of the common council.   That so far qualified the power given the mayor and comptroller by the succeeding act as to render it subject to the proviso or condition that in making the designation this prohibition should not be violated.   They were fully empowered to designate the newspapers, but, at the same time, they were not authorized to violate, in doing so, other laws imposing just and wholesome restraints upon their acts, and upon the capacity of other persons to be employed by them.   On the contrary, in executing the authority given, they were bound to do it without violating other statutory enactments.   In performing one duty, they were not at liberty to violate another, created by the same authority. These statutes related to the same general subjects.   They were in *pari materia*, and for that reason required to be considered, construed and enforced together.

It is well settled that in construing a doubtful statute, and for the purpose of arriving at the legislative intent, all acts on the same subject-matter are to be taken together and examined, in order to arrive at the true result.   Sedgwick on Stat. and Const. Law, 247, 248. And statutes are in *pari materia*, which relate to the same person or thing, or to the same class of persons and things.   The act of

1870 relates to and includes all contracts, work or business, to be paid for out of the city treasury, or by any assessment upon property. And that comprehended the contract or employment presented by this case ; for the compensation to be paid for the performance of it was payable out of the treasury of the city. The plaintiff was within the prohibition of the act of 1870. His designation and the acceptance of it constituted a contract on his part to make the publication and on the part of the city to pay him the compensation provided for its performance. It was both a contract and work to be done within the plain import of those terms, as they were used in the act of 1870 ; and, as health commissioner, he was incapable of taking such contract or work. For, in that capacity, he was one of the heads of a department of the city. The health department consisted of the police commissioners, the health officer of the port, and four officers appointed by the mayor, called commissioners of health of the city of New York ; and these several officers together constituted a board, which was made the head of the health department. Laws of 1870, chap. 137, § 90. The contract or employment was an unlawful one, in direct violation of one of the laws of the State expressly prohibiting it, and its performance could create no valid claim against the city for conpensation. *Seneca County Bank* v. *Lamb,* 26 Barb. 595 ; *Woodworth* v. *Port Jackson Plank-road Co.,* 7 id. 397.

The payments made by the defendants upon the services rendered in the performance of the unlawful employment do not advance or maintain the plaintiff's case ; for not having the power to lawfully enter into the agreement, it could not confirm or ratify it by partial performance. As long as the contract could not be directly made, no indirect action could supply it with legal vitality. It was at all times prohibited by law, and, for that reason, incapable of confirmation. *Marsh* v. *Fulton Co.,* 10 Wall. 677.

The restriction created by the statute was highly salutary in its character. It was designed to prevent persons employed and appointed for the promotion and protection of the public interests from being diverted from those objects by means of the pecuniary advantages they might otherwise secure for themselves. It was to harmonize the obligations of duty and the inclinations of self-interest ; to avoid the neglect or misconduct which a conflict between duty and interest would be apt to generate, and which could not fail, in the end, to increase the public expenditures and

burdens, requiring for their satisfaction enhanced taxation. The policy is similar to that which courts of law and equity have, from a high sense of duty, imposed upon all persons acting in the capacity of trustees, and instead of being unreasonably restrained by construction, it should be liberally applied for the promotion of the end designed to be accomplished by its enactment. It may operate harshly on plaintiff, by depriving him of compensation for services performed. But for that, he and the officers appointing him must bear the responsibility. As one of the heads of a department of the city, it was his duty to know the law, so far, certainly, as it affected his incapacity arising out of the position occupied by him to accept the contract and employment tendered.to him by the designation. And if the failure to observe that duty involves him in loss, it must be mainly attributed to that cause. Under the circumstances shown, he has no lawful demand against the defendant.

For that reason, judgment should be ordered for the defendant on the verdict.

*Judgment accordingly.*